<u>**ORAL ARGUMENT NOT YET SCHEDULED**</u>

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| AMERICAN FOREST & PAPER ASSOCIATION, INC., ) ) ) ) Petitioner, ) ) v. ) ) ENVIRONMENTAL PROTECTION ) AGENCY, ) ) Respondent. ) ) ) | No. 10-1172 |

<u>**UNOPPOSED MOTION TO GOVERN FUTURE PROCEEDINGS**</u>

Petitioner American Forest & Paper Association, Inc. ("AF&PA") hereby submits this Motion to Govern Future Proceedings pursuant to the Court's order of April 22, 2015 (Dkt. #1548683). In an order dated October 9, 2014 (Dkt. #1516414), the Court continued to hold this case in abeyance, pending the re-issuance of the Court's mandate in D.C. Circuit Case No. 09-1322, in response to the Supreme Court's June 23, 2014 decision in *Utility Air Regulatory Group v. EPA*, 134 S. Ct. 2427, S. Ct. No. 12-1146 (and consolidated cases), which reviewed this Court's decision in *Coalition for Responsible Regulation v. EPA*, 684

F.3d 102 (D.C. Cir. 2012) (*per curiam*), D.C. Circuit Case No. 09-1322 (and consolidated cases) ("*CRR*") (the case from which the instant petition for review was severed).

Although the Court has issued a mandate in *CRR* in response to the Supreme Court remand, because there may yet be further activity in that case – actions which could clarify how, if at all, AF&PA members will be harmed in the future by the rulemaking addressed by this petition for review – AF&PA respectfully requests that this case continue to be held in abeyance until 30 days after final resolution of any further proceedings in *CRR*, defined as the later of either (i) the expiration of time for the parties in *CRR* to file any type of appeal in that case, including but not limited to petitions for rehearing or any other petitions that may be filed in this Court or the Supreme Court; or (ii) final judicial resolution of any such petition or other appeal.  As explained below, continuing to hold this case in abeyance would promote judicial efficiency, conserve resources, and potentially avoid unnecessary litigation.

Counsel for AF&PA has contacted counsel for the other parties regarding the relief sought in this motion.  Counsel for Respondent EPA has indicated that EPA does not necessarily agree with each aspect of Petitioners' description of: (a) the Supreme Court's decision in *Utility Air Regulatory Group v. EPA*, 134 S. Ct.

2427 (2014) and the other cases citied herein: (b) the potential ramifications of the decisions in these cases; or (c) the manner in which various parties may seek further review of any of the cases cited in this motion. Nevertheless, Respondent EPA has no objection to the relief sought in Petitioners' motion and believes that continued abeyance would serve judicial economy. Counsel for Intervenor-Respondents Environmental Defense Fund, Natural Resources Defense Council, and Sierra Club have indicated that Intervenor-Respondents do not oppose the relief sought in this motion.

In further support of this motion, petitioner AF&PA states:

1. In its Petition for Review (No. 10-1172), AF&PA challenges certain aspects of an EPA regulation setting emission standards and related requirements for greenhouse gas emissions from specified classes of motor vehicles: "Light-Duty Vehicle Greenhouse Gas Emission Standards and Corporate Average Fuel Economy Standards; Final Rule," 75 Fed. Reg. 25,324 (May 7, 2010) (the "GHG tailpipe standards"). EPA promulgated those standards pursuant to Clean Air Act ("CAA") section 202(a), 42 U.S.C. § 7521(a). Specifically, AF&PA filed its Petition for Review to challenge EPA's inclusion, among those emissions subject to the GHG tailpipe standards, of carbon dioxide ("$CO_2$") from the combustion of biomass or biomass-derived fuel ("biogenic $CO_2$ emissions").

2. Although AF&PA members do not manufacture motor vehicles or motor vehicle fuels that are regulated directly by the GHG tailpipe standards, they were affected indirectly by EPA's promulgation of those standards. EPA's interpretation of the Clean Air Act, as reflected in the "Tailoring Rule," 75 Fed. Reg. 31,514 (June 4, 2010), and upheld by this Court in *CRR*, was that once greenhouse gases became subject to emission limitations by virtue of the GHG tailpipe standards, those greenhouse gases for the first time were required to be considered in determining whether a new or modified stationary source, such as those operated by AF&PA members, must obtain a Prevention of Significant Deterioration permit under Clean Air Act Title I Subtitle C, 42 U.S.C. ch. 85 subch. I pt. C (a "PSD permit"), whether new or modified sources that require a PSD permit must demonstrate that they will apply Best Available Control Technology ("BACT") to control greenhouse gas emissions, and whether stationary sources are required to obtain an operating permit under Clean Air Act Title V, 42 U.S.C. ch. 85 subch. V (a "Title V permit").

3. In response to a petition for administrative reconsideration of the application of the PSD and Title V permitting programs to biogenic $CO_2$ emissions filed by the National Alliance of Forest Owners ("NAFO"), pursuant to CAA section 307(d)(7), 42 U.S.C. § 7607(d)(7), EPA granted NAFO's petition on January 11, 2011 and shortly thereafter initiated actions to reconsider the

4

application of the PSD and Title V permitting programs to $CO_2$ emissions from biogenic sources. On July 20, 2011, EPA issued a final rule modifying the Tailoring Rule to defer application of PSD and Title V permitting requirements for $CO_2$ emissions from bioenergy and biogenic sources for a period of three years. 76 Fed. Reg. 43,490 (the "Deferral Rule"). During the three-year study period established in the Deferral Rule, which ended on July 21, 2014, biogenic $CO_2$ emissions were not be required to be counted for determining applicability under PSD and Title V permitting programs. *Id.*; 40 C.F.R. § 51.166(b)(48)(ii)(a). Environmental advocacy groups filed petitions for review of the Deferral Rule. *Center for Biological Diversity, et al. v. EPA*, No. 11-1101 (and consolidated cases) (the "Deferral Rule Challenge"), and NAFO, AF&PA, and others intervened in that action as respondents. On July 12, 2013, this Court issued a decision in *Center for Biological Diversity, et al. v. EPA*, No. 11-1101, holding that the Deferral Rule should be vacated (Dkt. #1446222). The Court withheld issuance of the mandate until seven days after disposition of any timely petition for rehearing or petition for rehearing *en banc* (Dkt. #1446226), and AF&PA and others filed a petition for rehearing on May 11, 2015 (Dkt. #1551956). EPA has not yet completed its administrative reconsideration of the applicability of the PSD permitting program to $CO_2$ emissions from biogenic sources.[1]

---

[1] Whether the requirement to obtain a Title V operating permit program should be

5

4. Thus, AF&PA members' injury from EPA's refusal to exclude biogenic $CO_2$ emissions from the GHG tailpipe standards (the action challenged in this case) depended in whole or part on EPA's decision to require PSD and Title V permits based on emissions of greenhouse gases (a decision since overturned by the Supreme Court in *UARG v. EPA*, see Paragraph 5, *infra*), as well as EPA's decision to require that PSD permits include BACT requirements for greenhouse gas emissions. That injury could be eliminated or mitigated depending on EPA's reconsideration of application of the PSD permitting program's BACT requirements to biogenic $CO_2$ emissions (at issue in the Deferral Rule Challenge and in EPA's ongoing reconsideration pursuant to NAFO's petition for reconsideration). Accordingly, the Court granted several AF&PA motions to hold this case in abeyance, originally pending expiration (or successful challenge) of the Deferral Rule and the completion of EPA's reconsideration of regulation of biogenic $CO_2$ emissions under the PSD and Title V permitting programs; and subsequently, pending the Supreme Court's resolution of challenges to the Tailoring Rule and related EPA decisions in *UARG v. EPA* (order of January 24, 2014 (Dkt. #1476694)) and then this Court's action in response to the Supreme Court remand (order of October 9, 2014 (Dkt. #1516414)). (See AF&PA's

---

triggered by biogenic $CO_2$ emissions is no longer an issue, since the Supreme Court has held that greenhouse gas emissions do not trigger Title V permit requirements. *See* Paragraph 5, *infra*.

6

November 14, 2013 motion to govern further proceedings (Dkt. #1466285) for further discussion of this procedural history.)

5. On June 23, 2014, the Supreme Court issued its decision in *UARG v. EPA*. That decision rejected EPA regulations that make emissions of greenhouse gases a potential trigger for whether a new or modified source must obtain a PSD permit or whether an existing source must obtain a Title V permit. Slip op. at 10, 15-16, 29, 134 S. Ct. at 2439, 2442, 2449. The Supreme Court also held, however, that EPA has discretion to require new or modified sources that are required to obtain a PSD permit because of their emissions of other pollutants to demonstrate that they will use BACT to control their greenhouse gas emissions. *Id*. at 27-19, 134 S. Ct. at 2448-29 (relying on Clean Air Act section 165(a)(4), 42 U.S.C. § 7475(a)(4)). The Supreme Court stated, however, that EPA had not attempted to show that the threshold in the Tailoring Rule, for when such sources would have to apply BACT for their greenhouse gas emissions, represented a true *de minimis* level. Slip op. at 28-29, 134 S. Ct. at 2448-49.

6. The full effect of the Supreme Court's *UARG v. EPA* decision, with respect to potential injury to AF&PA members as a result of EPA's inclusion of emissions from biomass as part of the GHG tailpipe standards, is not clear at this time. On April 10, 2015, this Court issued an Amended Judgment in *CRR*. (Doc.


#1546840). The Amended Judgment vacated the regulations adopted in the Tailoring Rule "to the extent they require a stationary source to obtain a PSD permit" based solely on GHG emissions and ordered EPA to "consider whether any further revisions to its regulations are appropriate in light of *UARG v. EPA*, 134, S. Ct. 2427, and if so, undertake to make such revisions." *Id.* It is possible further proceedings may occur in *CRR* that could be relevant to the instant case. For example, any petition for rehearing of the Amended Judgment in *CRR* would be due May 26, 2015. *See* Fed. R. App. P. 40. Moreover, EPA's reconsideration of how the BACT requirement might apply to biogenic $CO_2$ emissions, described above, is still ongoing, and it necessarily is interrelated with what actions EPA will be required to take, or may take, EPA as a result of the *CRR* case.

7. Thus, at this time it is not fully resolved which of the issues in this case remain in controversy, and it is possible that the parties may agree on a proposed disposition of those issues in part or in full. It is also possible that EPA will commence or continue rulemaking proceedings that could eliminate or mitigate any continuing injury AF&PA members might otherwise suffer as a result of the GHG tailpipe standards. Continuing to hold this case in abeyance until 30 days after final resolution of *CRR* will allow the parties to assess how EPA actions in response to the Supreme Court's *UARG v. EPA* decision, as reflected in this Court's mandate to EPA in *CRR*, may clarify how the relevant regulations will

apply and help determine whether any or all of the issues presented in this case can now be resolved consensually. Continuing to hold this case in abeyance as requested in this Motion To Govern Further Proceedings therefore will avoid unnecessary waste of resources of the parties and this Court.[2]

 For the foregoing reasons, AF&PA respectfully requests:

 A. That the Court continue to hold this case in abeyance; and

 B. That the Court direct the parties to file a motion or motions to govern future proceedings within 30 days after final resolution of *Coalition for Responsible Regulation v. EPA*, Case No. 09-1322 (and consolidated cases), defined as the later of either (i) the expiration of time for the parties in *CRR* to file any type of appeal in that case, including but not limited to petitions for rehearing or any other petitions that may be filed in this Court or the Supreme Court; or (ii) final judicial resolution of any such petition or other appeal..

Dated: May 22, 2015

            Respectfully submitted,

---

[2] Petitioners challenging the Tailoring Rule's inclusion of biogenic $CO_2$ emissions, in *National Alliance of Forest Owners, et al., v. U.S. EPA*, No. 10-1209, also have moved to have their case held in abeyance until 30 days after final resolution of *CRR*, for similar reasons. (Dkt. #1553900).

/s/ Russell S. Frye
FryeLaw PLLC
1101 30th Street, N.W.  Suite 220
Washington, DC  20007-3769
Tel: (202) 572-8267
Fax: (866) 850-5198
rfrye@fryelaw.com
Counsel for Petitioner American Forest
& Paper Association, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2015, I electronically filed the forgoing Unopposed Motion to Govern Further Proceedings with the Clerk of the Court using the Court's CM/ECF system, which will send electronic notification of this filing to the attorneys of record in the consolidated cases who are registered CM/ECF users.

/s/ Russell S. Frye
FryeLaw PLLC
1101 30th Street, N.W.  Suite 220
Washington, DC  20007-3769
Tel: (202) 572-8267
Fax: (866) 850-5198
rfrye@fryelaw.com